UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MICHEL TORRES,

Plaintiff,

v. Case No. 3:26-cv-206-MMH-PDB

CENTURION OF FLORIDA, LLC, etc.,

Defendants.

---

**ORDER**

Plaintiff Michel Torres, an inmate of the Florida Department of Corrections (FDC), initiated this action by filing a pro se Civil Rights Complaint (Doc. 1). The Court granted Torres's motion to proceed as a pauper but directed him to file an amended complaint because the one he mailed to the Court "lack[ed] an original signature." See Order (Doc. 8). Before the Court for screening is Torres's Amended Complaint (Amended Complaint; Doc. 9), which is accompanied by an Emergency Motion for Immediate Medical Injunction Relief (Motion; Doc. 10).

In his Amended Complaint, Torres identifies the following Defendants: Centurion Corporation of Florida, the company under contract with the FDC to provide medical care for inmates; Dr. Alexis Figueroa, the Regional Medical

Doctor for Centurion; James Neizer, a Medical Doctor; and ten "Jane Doe" Nurses. See Amended Complaint at 2. He alleges Defendants failed to provide appropriate care for him following bilateral knee surgery. Id. at 7. Torres explains that he had surgery in April 2024 and completed six weeks of physical therapy, but he remained "unable to flex or extend his knees normally," so he submitted multiple grievances seeking additional follow-up care. Id.

According to Torres, Dr. Figueroa "officially reviewed and approved [his] formal grievance, explicitly acknowledging and directing that [Torres] required an immediate referral to an orthopedic specialist for post surgical evaluation," but the referral was never made. Id. at 8. Torres asserts, with no explanation, that Dr. Neizer "subsequently intervened to deny [Torres's] repeated emergency requests, willfully refusing to authorize the approve[d] specialist evaluation, withholding required diagnostic imaging, and denying basic mobility accommodations." Id. Torres asserts no allegations against the individual "Jane Doe" nurses, but rather generally blames all "prison medical staff" for the failure to provide "adequate follow-up care." Id. at 9.

In his Motion, Torres asks that the Court compel Defendants to send him to an orthopedic specialist, order diagnostic testing, provide all necessary medical "interventions," and issue him a walker and mobility passes. See Motion at 1–2. The Motion is facially insufficient in that it does not include a

memorandum of law or otherwise comply with this Court's Local Rules. See M.D. Fla. R. 6.01. It is due to be denied on that basis alone. However, the Motion is also due to be denied because, with the Motion, Torres provides copies of grievance records he cites in his Amended Complaint as Exhibits "A" and "B" (Exhibits; Doc. 10-1), which compel the conclusion that he fails to state a plausible deliberate indifference claim.

On July 9, 2024, Torres submitted a medical grievance complaining that he was still waiting for physical therapy to begin following his surgery. See Exhibits 10-1 at 2. Dr. Figueroa responded to that grievance, advising as follows: "You are pending an appointment for Physical Therapy. You will have a follow up with the Orthopedic doctor after Physical Therapy." Id. at 1. Over one year later, on September 22, 2025, Torres submitted a grievance complaining that when he saw Nurse Carter earlier that month, Nurse Carter would not entertain his requests for a medical pass and a walker (related to his knee issues) because his appointment was for "cardio problems." Id. at 4. Dr. Neizer responded to that grievance, advising as follows: "You were seen on 9/19/25 for your Cardio Clinic and sick calls. All medically necessary passes and medications were written or renewed. Per provider[,] you currently do not meet criteria to qualify for [a] cane or low bunk pass." Id. at 3.

The Prison Litigation Reform Act (PLRA) requires the Court to dismiss this case at any time if the Court determines that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. §§ 1915(e)(2)(B); 1915A. "A claim is frivolous if it is without arguable merit either in law or fact." Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001) (citing Battle v. Cent. State Hosp., 898 F.2d 126, 129 (11th Cir. 1990)). A complaint filed in forma pauperis which fails to state a claim under Federal Rule of Civil Procedure 12(b)(6) is not automatically frivolous. Neitzke v. Williams, 490 U.S. 319, 328 (1989). Section 1915(e)(2)(B)(i) dismissals should only be ordered when the legal theories are "indisputably meritless," id. at 327, or when the claims rely on factual allegations which are "clearly baseless." Denton v. Hernandez, 504 U.S. 25, 32 (1992). "Frivolous claims include claims 'describing fantastic or delusional scenarios, claims with which federal district judges are all too familiar.'" Bilal, 251 F.3d at 1349 (quoting Neitzke, 490 U.S. at 328). Additionally, a claim may be dismissed as frivolous when it appears that a plaintiff has little or no chance of success. Id. As to whether a complaint "fails to state a claim on which relief may be granted," the language of the PLRA mirrors the language of Rule 12(b)(6), Federal Rules of Civil Procedure,

and therefore courts apply the same standard in both contexts.[1] Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997); see also Alba v. Montford, 517 F.3d 1249, 1252 (11th Cir. 2008).

Under the Federal Rules of Civil Procedure, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. (8)(a)(2). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff still must meet some minimal pleading requirements. Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1262–63 (11th Cir. 2004). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Twombly, 550 U.S. at 555). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

[1] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

While not required to include detailed factual allegations, a complaint must allege "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id.

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal" (original alteration omitted)). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]"which simply "are not entitled to [an] assumption of truth." Iqbal, 556 U.S. at 678, 680. In the absence of well-pled facts suggesting a federal constitutional deprivation or violation of a federal right, a plaintiff cannot sustain a cause of action against the defendant.

In assessing the Amended Complaint, the Court must read Torres's pro se allegations in a liberal fashion. Haines v. Kerner, 404 U.S. 519 (1972). And, while "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998), "this leniency does not

give the court a license to serve as de facto counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action," Campbell v. Air Jamaica Ltd., 760 F.3d 1165, 1168–69 (11th Cir. 2014).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) the defendant deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. Salvato v. Miley, 790 F.3d 1286, 1295 (11th Cir. 2015); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011) (per curiam); Richardson v. Johnson, 598 F.3d 734, 737 (11th Cir. 2010) (per curiam). A plaintiff must allege "an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation." Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (citation omitted); Porter v. White, 483 F.3d 1294, 1306 n.10 (11th Cir. 2007).

The Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526–27 (1984)). To establish an Eighth Amendment violation, a prisoner must satisfy both an objective and subjective inquiry regarding a prison official's

conduct. Swain v. Junior, 961 F.3d 1276, 1285 (11th Cir. 2020) (citing Farmer, 511 U.S. at 834).

As to the subjective inquiry, an inmate must allege the defendant was deliberately indifferent to sufficiently serious prison conditions. "[T]he deliberate-indifference standard sets an appropriately high bar." Swain, 961 F.3d at 1285. For decades, the Eleventh Circuit described that "high bar" inconsistently as a "more than mere negligence" or "more than gross negligence standard." See Hoffer v. Sec'y, Fla. Dep't of Corr., 973 F.3d 1263, 1270 (11th Cir. 2020) ("To establish deliberate indifference, a plaintiff must demonstrate that the prison officials (1) had subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) acted with more than gross negligence." (internal quotations omitted)); see also Wade v. McDade, 106 F.4th 1251, 1255 (11th Cir. 2024). However, in 2024, the Eleventh Circuit determined that those standards conflicted with the Supreme Court's decision in Farmer and clarified that courts in this circuit should apply the "subjective recklessness" standard as used in the criminal law. See Wade, 106 F.4th at 1253, 1262.[2]

---

[2] The Court notes that the Honorable Adalberto Jordan wrote a concurrence to the majority's opinion in Wade, finding that to the extent prior Eleventh Circuit deliberate indifference cases are not inconsistent with Wade, "they should continue to be cited as binding precedent." Wade, 106 F.4th at 1265 (Jordan, J., concurring).

The Eleventh Circuit recently emphasized that the subjective recklessness standard requires a plaintiff to show a prison official had "more than a generalized or abstract knowledge" of a risk. See McClinton v. Warden, Baldwin State Prison, 172 F.4th 1276, 1283 (11th Cir. 2026). "Put simply, a constitutional violation occurs only when prison officials act 'consciously' such that their acts or omissions knowingly have the effect of inflicting a punishment." Id. As such, the Constitution is not implicated by the negligent acts of corrections officials and medical personnel. Daniels v. Williams, 474 U.S. 327, 330–31 (1986); see also Davidson v. Cannon, 474 U.S. 344, 348 (1986) ("As we held in Daniels, the protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care by prison officials.").

For instance, the Eleventh Circuit has noted that "the question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995) (quoting Estelle v. Gamble, 429 U.S. 97, 107 (1976)). Moreover, because the deliberate indifference standard demands that an officer act knowingly, "imputed or collective knowledge cannot serve as the basis for a claim of

deliberate indifference." Burnette v. Taylor, 533 F.3d 1325, 1331 (11th Cir. 2008). Rather, "[e]ach individual Defendant must be judged separately and on the basis of what that person knows." Id.

The law is well established that "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003), abrogated in part on other grounds by Randall v. Scott, 610 F.3d 701 (11th Cir. 2010). To establish individual liability for supervisory conduct, a plaintiff must show "that the supervisor either directly participated in the unconstitutional conduct or that a causal connection exists between the supervisor's actions and the alleged constitutional violation." Keith v. DeKalb Cnty., 749 F.3d 1034, 1047–48 (11th Cir. 2014).

> Causation "may be established and supervisory liability imposed where the supervisor's improper custom or policy results in deliberate indifference to constitutional rights." Id.[3] (alterations adopted) (internal quotation marks omitted). "A plaintiff can also show that the absence of a policy led to a violation of constitutional rights." Piazza,[4] 923 F.3d at 957. "Either way, though, to prove that a policy or its absence caused a constitutional harm, a plaintiff must point to multiple incidents, or multiple reports of prior misconduct by a particular employee." Id. (citation omitted). And allegations of a single incident of unconstitutional conduct cannot state a claim for supervisory liability, even when the conduct involves several subordinates. Id. at 957–58.

---

[3] Hartley v. Parnell, 193 F.3d 1263 (11th Cir. 1999).

[4] Piazza v. Jefferson Cnty., 923 F.3d 947 (11th Cir. 2019).

Ingram v. Kubik, 30 F.4th 1241, 1254 (11th Cir. 2022).

The requisite causal connection is not established merely by filing a grievance with a supervisory official. See Jones v. Eckloff, No. 2:12-cv-375-Ftm-29DNF, 2013 WL 6231181, at *4 (M.D. Fla. Dec. 2, 2013) (citing Gallagher v. Shelton, 587 F.3d 1063, 1069 (10th Cir. 2009)) ("[F]iling a grievance with a supervisory person does not automatically make the supervisor liable for the allegedly unconstitutional conduct brought to light by the grievance, even when the grievance is denied.").[5]

Torres's Amended Complaint is subject to dismissal pursuant to this Court's screening obligation because he fails to state a plausible claim under § 1983. The only Defendants whose actions Torres describes in his Amended Complaint are Drs. Figueroa and Neizer, but even those allegations are vague. Torres asserts that Dr. Neizer "willfully refus[ed] to authorize the approve[d] [orthopedic] specialist evaluation," which Dr. Figueroa made. Amended Complaint at 8. Even if interfering with or denying another medical provider's referral constitutes deliberate indifference, the grievance records Torres relies upon contradict his assertions. As an initial matter, Dr. Figueroa merely noted

---

[5] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects.").

in a July 2024 grievance response that the plan was for Torres to have a follow up with an orthopedist after he completed physical therapy. See Exhibits at 1. Accepting as true that the orthopedic follow up never occurred, it appears, based on the records Torres provides, that he blames Dr. Neizer solely because Neizer responded to his September 2025 grievance and advised him that a different medical provider determined he did "not meet criteria . . . for [a] cane or [a] low bunk pass." Id. at 3.

There are circumstances in which a defendant's failure to act in response to an inmate's grievance may result in a constitutional violation, but only if the defendant's lack of action amounted to deliberate indifference and the delay attributable to the defendant's deliberate indifference may have caused the inmate's injury. See Goebert v. Lee Cnty., 510 F.3d 1312, 1327–29 (11th Cir. 2007). In Goebert, a pregnant pretrial detainee submitted a medical complaint form, wherein she requested to see an obstetrician or a doctor outside of the county jail. Id. at 1318. The plaintiff alleged in her complaint that she had leaked amniotic fluid for approximately nine days, she had not felt any movements from her baby, and she had a history of miscarriages. Id. The defendant, a facility commander, responded that medical could arrange an appointment at her expense, despite the plaintiff noting in her complaint that medical staff had "ignored her daily requests for aid and had already failed to

set up an appointment for her with an outside obstetrician." Id. at 1328. In finding that the defendant was not entitled to summary judgment, the Eleventh Circuit noted that the inmate's written complaint contained sufficient information to provide the defendant with subjective knowledge of her serious medical need, and his failure to take action in response to her complaint because he did not believe her amounted to deliberate indifference. Id. at 1327–28.

But the facts of this case are distinguishable from those in Goebert. Whereas the defendant in Goebert completely disregarded his duty to investigate the inmate's time-sensitive serious medical complaints, here Drs. Figueroa and Neizer considered and addressed Torres's complaints, and their responses permit the inference that other providers were treating Torres's continued problems with his knees. These responses reflect that prison officials inquired into the matter and did not "deliberately disregard, without any investigation or inquiry," Torres's complaints. Goebert, 510 F.3d at 1328.

In short, Torres asserts no facts demonstrating the requisite causal connection between Drs. Figueroa's or Neizer's conduct and any alleged constitutional violation. For instance, he does not allege that either doctor refused to treat a serious medical need or directed other medical providers not to treat him. On the contrary, his own allegations and the responses to his

grievances demonstrate that he received medical care, including bilaterial knee surgeries and physical therapy. It also appears that, while he was recovering from the surgeries, he received necessary "mobility accommodations," which later were discontinued by a different doctor. See Amended Complaint at 8; see also Exhibits at 3.

Upon review of the Amended Complaint, it appears Torres was dissatisfied with the results of his surgeries, the failure to (timely) schedule him for an orthopedic follow up, the efficacy of the post-surgical care he received, the sick-call process, or the decision by an unnamed medical provider to discontinue mobility accommodations. Even were Drs. Figueroa or Neizer responsible for any of complaints Torres has about his surgeries and post-surgical care, a mere disagreement with the decisions of medical providers or the care they provided is an insufficient basis for grounding liability under § 1983.

With respect to the nurses, Torres similarly fails to state a plausible claim for relief. As mentioned, Torres does not attribute any specific act or omission to a particular nurse (other than Carter, in a grievance). Accepting that Nurse Carter would not entertain Torres's requests for accommodations related to his knees at a medical appointment for cardio issues, Torres describes no facts permitting the reasonable inference that Nurse Carter acted

with "subjective recklessness as used in the criminal law." See Wade, 106 F.4th at 1262.

As to the other nurses, Torres does not identify any by name, and the Eleventh Circuit has consistently held that "fictitious-party pleading is not permitted in federal court" unless that person is described with enough specificity such that the person can be identified and served. See Richardson, 598 F.3d at 738; see also Williams v. DeKalb Cnty. Jail, 638 F. App'x 976, 976–77 (11th Cir. 2016)[6] ("A fictitious name . . . is insufficient to sustain a cause of action."). Torres does not discuss, much less describe, any of the ten Jane Doe nurses he seeks to sue. See Amended Complaint at 8–9. Rather, he asserts generally that he was "completely abandoned by prison medical staff." Id. at 9. Even if one or more nurses could be identified and served, Torres's allegations of "collective knowledge" are insufficient to satisfy the strict deliberate indifference standard. See Burnette, 533 F.3d at 1331.

Because Torres fails to state a plausible claim for relief against the individual Defendants, to the extent his claim against Centurion is based on a

[6] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. Gov't Emps. Ins. Co., 30 F.4th 1055, 1060–61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

theory of respondeat superior (i.e., for adopting an unconstitutional policy or custom), his claim necessarily fails. See Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1308 (11th Cir. 2009) (holding the plaintiff's supervisory liability and official capacity claims failed "because the underlying § 1983 claims fail[ed]"). For the stated reasons, this case is due to be dismissed and Torres's Motion denied.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1. This case is hereby **DISMISSED without prejudice**.

2. Torres's Emergency Motion (Doc. 10) is **DENIED**.

3. The **Clerk** shall enter judgment dismissing this case without prejudice, terminate any pending motions, and close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 22nd day of July, 2026.

**MARCIA MORALES HOWARD**
United States District Judge

Jax-6
c:
Michel Torres